# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1008

_____

Jose Luis Reyes-Morales,                          \*
                                                  \*
             Petitioner,              \*
                                                  \*  Petition for Review of an
   v.                                            \*  Order of the Board of
                                                  \*  Immigration Appeals.
Alberto Gonzales,\* Attorney General of   \*
the United States of America,                     \*
                                                  \*
             Respondent.             \*

_____

Submitted: November 18, 2005
Filed: January 31, 2006

_____

Before WOLLMAN, LAY, and MELLOY, Circuit Judges.

_____

LAY, Circuit Judge.

## I. BACKGROUND

Jose Luis Reyes-Morales is a native and citizen of El Salvador. In January 1991, Reyes-Morales entered the United States and, on May 28, 1998, submitted an application for asylum with the Immigration and Naturalization Service ("INS"). In

_____

\*Alberto Gonzales has been appointed to serve as Attorney General of the United States, and is substituted as Respondent pursuant to Federal Rule of Appellate Procedure 43(c).

July 1999, the INS denied Reyes-Morales' asylum application and referred the matter to an immigration court. The INS commenced removal proceedings against Reyes-Morales by filing a notice to appear, charging Reyes-Morales as a removable alien present in the United States without being admitted or paroled under 8 U.S.C. § 1182(a)(6)(A)(i).

Reyes-Morales admitted to the allegations set forth in the notice to appear and conceded removability. However, Reyes-Morales contested his deportation from the United States, filing an application for asylum and moving for special rule cancellation of removal under the Nicaraguan Adjustment and Central American Relief Act of 1997 ("NACARA"). NACARA § 203; Pub. L. No. 105-100, 111 Stat. 2160.

Shortly thereafter, the INS also filed a charging document alleging that Reyes-Morales was statutorily ineligible for special rule cancellation of removal under 8 U.S.C. § 1182(a)(2)(A)(i) because he was convicted of two crimes involving moral turpitude.

On July 1, 2003, an immigration judge ("IJ") ruled that Reyes-Morales was a removable alien, denied his application for asylum, and found him ineligible for special rule cancellation of removal under the NACARA. As to Reyes-Morales' NACARA claim, the IJ ruled that his past convictions for providing false information to police and gross misdemeanor stalking/harassment qualified as crimes involving moral turpitude, therefore barring the IJ from finding he possessed the requisite good moral character necessary to trigger eligibility under the NACARA.

Reyes-Morales subsequently appealed this decision to the Board of Immigration Appeals ("BIA"). The BIA denied Reyes-Morales' appeal, issuing a per curiam opinion affirming the IJ's decision. The BIA also added two points of substantive

analysis supplementing the IJ's decision. Reyes-Morales' now files a petition for review of the BIA's order.

## II.  DISCUSSION

### A.  Reyes-Morales' Asylum-Based Claims

Reyes-Morales challenges a number of asylum-related rulings.  First, he argues the IJ erred by rejecting his claim for asylum based on past persecution and a reasonable fear of future persecution under 8 U.S.C. § 1158(b)(1).  Reyes-Morales next argues the BIA abused its discretion when it rejected his application for asylum based on the severity of his past persecution.  See 8 C.F.R. § 1208.13(b)(1)(iii)(A). Third, Reyes-Morales argues the BIA committed error when it mistakenly referred to a critical regulation by the wrong section heading in its opinion.  Finally, Reyes-Morales argues the IJ committed error when he failed to consider him eligible for asylum based on past persecution.  We will address each claim in turn.

      1.     Asylum Based on Past Persecution and a Reasonable Fear of Future Persecution.

Reyes-Morales first challenges the denial of his application for asylum under 8 U.S.C. § 1158(b)(1).  This court reviews the BIA's asylum eligibility rulings under the substantial evidence standard.  S-Cheng v. Ashcroft, 380 F.3d 320, 323 (8th Cir. 2004).  We will only overturn the BIA's decision if "no reasonable fact-finder could arrive at the conclusion reached by the BIA."  Id.  Where the BIA adopts and affirms the decision of the IJ, we will review the IJ's opinion directly.  Bernal-Rendon v. Gonzalez, 419 F.3d 877, 880 (8th Cir. 2005).  In this case, the BIA affirmed and adopted the decision of the IJ on this issue.  Therefore, we review the IJ's decision directly.

Under § 1158(b)(1), Reyes-Morales is eligible for asylum if he is a "refugee." A refugee is defined as an alien unwilling to return to his home country "because of [past] persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Proof of past persecution based on one of the enumerated bases listed under § 1101(a)(42)(A) gives rise to a presumption that Reyes-Morales also maintains a reasonable fear of future persecution. 8 C.F.R. § 208.13(b)(1). This presumption, in turn, places the burden on the government to demonstrate, by a preponderance of the evidence, that there has been a fundamental change in circumstances in El Salvador such that Reyes-Morales may no longer credibly claim a well-founded fear of future persecution. Id.; Gomez v. Gonzales, 425 F.3d 543, 546 (8th Cir. 2005).

The IJ ruled that even if Reyes-Morales had established past persecution, the government discharged its burden of proof by showing that he did not maintain a reasonable fear of future persecution. In response, Reyes-Morales argues that a single State Department report cannot, as a matter of law, discharge the government's burden of proof. This case does not present such a narrow question. Instead, the IJ properly relied on the State Department report and the testimony of Reyes-Morales to conclude that Reyes-Morales does not have a reasonable fear of future persecution.

The IJ first recognized that general conditions in El Salvador have improved because there is no longer civil war. To support this conclusion, the IJ relied on a State Department Country Conditions Report, which noted that general conditions have improved in El Salvador since the signing of the 1992 peace accords. We recognize that Reyes-Morales' allegations of past persecution stemmed from heightened tensions between members of El Salvador's official military and guerilla fighters during the civil war. The State Department report therefore helps demonstrate that the general civil unrest which led to Reyes-Morales' abuse has abated. In this regard, the IJ properly considered the State Department report in reaching his

-4-

conclusion. Our court has expressly held that a State Department report assessing country conditions may be used to rebut the presumption that an asylum-seeker has a reasonable fear of future persecution. Awale v. Ashcroft, 384 F.3d 527, 531 (8th Cir. 2004).

The IJ also based his decision, in part, on the testimony of Reyes-Morales. Reyes-Morales testified that he did not fear government persecution in the event he was returned to El Salvador. Reyes-Morales also stated that he has not been actively recruited by members of the official military since he lived in El Salvador in 1982. We therefore rule that Reyes-Morales' testimony, together with the State Department Country Conditions Report, provide substantial record evidence to demonstrate that he did not have an objectively reasonable fear of future persecution. As such, the IJ properly found Reyes-Morales ineligible for asylum under § 1158(b)(1).

2.      Asylum Based on the Severity of Past Persecution.

We next address Reyes-Morales' claim that the BIA abused its discretion when it failed to grant him relief based on the severity of his past persecution.[1] On review, we will not disturb the discretionary rulings of the BIA unless they are arbitrary and capricious. Maashio v. INS, 45 F.3d 1235, 1238 (8th Cir. 1995).

Under 29 C.F.R. § 1208.13(b)(1)(iii)(A), or the "humanitarian grant of asylum" provision, the BIA has discretion to grant an applicant asylum so long as he can demonstrate "compelling reasons for being unwilling or unable to return to [his] county arising out of the severity of past persecution[.]" 29 C.F.R. § 1208.13(b)(1)(iii)(A). To qualify for relief under this provision, we have required petitioners to demonstrate abuse that is "particularly atrocious." Cigaran v.

_____

[1]The IJ did not expressly rule on Reyes-Morales' claim that he was entitled to asylum based on the severity of his past persecution. The BIA, however, addressed the merits of this claim in its decision.

-5-

Heston, 159 F.3d 355, 357 (8th Cir. 1998). Moreover, asylum based on past persecution is properly invoked only where the "past persecution is so severe that it would be inhumane to return the alien even in the absence of any risk of future persecution." Vaduva v. INS, 131 F.3d 689, 690 (7th Cir. 1997). By contrast, courts have upheld the BIA's denial of asylum based on past persecution where the applicant was arrested, beaten, fired, and denied future employment. Rojas v. INS, 937 F.2d 186, 188 (5th Cir. 1991).

We acknowledge that Reyes-Morales was beaten unconscious by members of the El Salvadorian military, leaving him with a physical deformity and several scars. Reyes-Morales' friend was also killed during this incident. However, the severity of this abuse, in addition to the circumstances surrounding it, do not place Reyes-Morales in the class of individuals entitled to this form of relief. Therefore, we rule that the BIA's exercise of discretion in this instance was not arbitrary or capricious and, as such, the BIA did not err when it found Reyes-Morales ineligible for relief based on past persecution.

3.    Reyes-Morales' Remaining Asylum-Based Claims.

Reyes-Morales also contends the BIA committed error when it incorrectly referenced the humanitarian grant of asylum provision by the wrong regulation section in its opinion. Specifically, the BIA mistakenly cited 8 C.F.R. § 1208.13(b)(1)(iiii)(A) instead of correctly referencing § 1208.13(b)(1)(iii)(A). Although we acknowledge the BIA's clerical error, we note that the BIA applied the correct controlling language from § 1208.13(b)(1)(iii)(A) to support its analysis. Therefore, we rule that the BIA's error was purely ministerial and therefore harmless. See United States v. DeVore, 839 F.2d 1330, 1331 (8th Cir. 1988) (stating that a clerical error that causes no prejudice is "immaterial and harmless").

Finally, Reyes-Morales argues the IJ committed error when he did not expressly consider Reyes-Morales' eligibility for asylum based on past persecution. In his

opinion, the IJ questioned whether the abuse Reyes-Morales suffered as a youth in El Salvador even rose to the level of persecution. Given his hesitation on the issue, the IJ did not see fit to address the significantly more demanding requirements necessary to qualify for a humanitarian grant of asylum. Yet even if we were to assume this was error, the BIA corrected the IJ's omission by addressing, considering, and subsequently dismissing Reyes-Morales' petition for asylum based on past persecution in its opinion. We therefore rule that, to the extent the IJ committed error, it was harmless.

## B.    Reyes-Morales' NACARA Claim

Reyes Morales argues the IJ erred when he found him ineligible for special rule cancellation of removal under the NACARA. Specifically, Reyes-Morales asserts his conviction for making harassing phone calls under Minn. Stat. § 609.749 is not a crime involving moral turpitude and should not bar him from relief under the NACARA.

Under the NACARA, the Attorney General is cloaked with discretion to cancel the removal of, and confer lawful permanent resident status to, an alien who has filed an application with the INS on or before 1990,[2] and who:

(i)     is not inadmissible or deportable under paragraph (2) or (3) of section 212(a) or paragraph (2), (3), or (4) of section 237(a) of the Immigration and Nationality Act and is not an alien described in section 241(b)(3)(B)(i) of such Act;

(ii)    has been physically present in the United States for a continuous period of not less than 7 years immediately preceding the date of such application;

---

[2]Reyes-Morales first filed an application for asylum when he was apprehended by the INS in Kansas City in 1985.

(iii)    has been a person of good moral character during such period; and

(iv)    establishes that removal would result in extreme hardship to the alien or to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence.

NACARA § 203; <u>Cuadra v. Gonzales</u>, 417 F.3d 947, 949 (8th Cir. 2005).

In order for Reyes-Morales to satisfy the first prong of this test, he must be admissible under 8 U.S.C. § 1182(a)(2)(A) (§ 212(a) of the Immigration and Nationality Act). Section 1182(a)(2)(A)(i)(I) renders an alien inadmissible if he is convicted of "a crime involving moral turpitude." <u>Id.</u>    However, § 1182(a)(2)(A)(ii)(II) creates an exception to this general rule. Under this provision, known as the "petty offense" exception, an alien is admissible even if he has been convicted of one crime involving moral turpitude so long as the statutory maximum for his crime does not exceed one year and he was not sentenced to more than six months imprisonment for the offense. <u>See</u> § 1182(a)(2)(A)(ii)(II). An alien with two convictions for crimes involving moral turpitude, by contrast, does not qualify for the exception and is per se inadmissible under § 1182(a)(2)(A).

The IJ found Reyes-Morales inadmissible under § 1182(a)(2)(A) because he was convicted of two crimes involving moral turpitude. This disqualified him from special rule cancellation of removal under the NACARA. The IJ did not reach the merits of prongs two through four of the NACARA's eligibility requirements.

Reyes-Morales now asserts that his conviction for making harassing phone calls under Minn. Stat. § 609.749 is not a crime involving moral turpitude and, therefore, he is admissible under § 1182(a)(2)(A) based on the "petty offense" exception.

-8-

Reyes-Morales notes that admissibility under § 1182(a)(2)(A) also renders him eligible for relief under the NACARA.[3]

When reviewing the IJ's statutory mandate to deport aliens convicted of crimes involving moral turpitude, we must accord deference to the BIA's rulings, and will uphold its decision so long as it is reasonable.[4] Franklin v. INS, 72 F.3d 571, 572 (8th Cir. 1995). More precisely, we must first look to the BIA's definition of "a crime involving moral turpitude," giving deference to its interpretation of the term. We must then decide whether the IJ acted reasonably when he concluded that the elements of Reyes-Morales' conviction under Minn. Stat. § 609.749 involved moral turpitude. Because the BIA adopted the IJ's decision on this issue, we will review the IJ's ruling directly. Bernal-Rendon, 419 F.3d at 880. However, we need not address the second part of this test because we find the IJ's definition of a crime involving moral turpitude, on its face, to be unreasonable.

We first turn to the IJ's definition of a crime involving moral turpitude. In his opinion, the IJ stated that he could properly infer that a crime involved moral turpitude

---

[3]Reyes-Morales concedes that his conviction for providing a police officer with a false name, in violation of Minn. Stat. § 609.506, is a crime involving moral turpitude.

[4]Ordinarily we review, de novo, the legal determinations of the BIA, while according substantial deference to its interpretation of the statutes and regulations it administers. De Brenner v. Ashcroft, 388 F.3d 629, 636 (8th Cir. 2004). At least four other circuits have adopted this standard when reviewing the BIA's moral turpitude rulings. See Knapik v. Ashcroft, 384 F.3d 84, 88 (3d Cir. 2004); Smalley v. Ashcroft, 354 F.3d 332, 335-36 (5th Cir. 2003); Michel v. INS, 206 F.3d 253, 262 (2d Cir. 2000); Rodriguez-Herrera v. INS, 52 F.3d 238, 240 n.4 (9th Cir. 1995). Recently, a panel from our circuit also implicitly applied this standard. See Chanmouny v. Ashcroft, 376 F.3d 810, 811-15 (8th Cir. 2004). To the extent our circuit may wish to change or re-affirm use of the Franklin standard, we note only that this is a matter for the en banc court.

so long as the crime also involved threatening behavior. Specifically, the IJ stated that, "threatening behavior [] reflect[s] the type of vicious motive or corrupt mind that provides the basis for a crime to be considered to involve moral turpitude." Admin. R. at 76. To support this definition, the IJ cited the BIA's decision in In re Ajami, 22 I. & N. Dec. 949 (BIA 1999). In Ajami, the BIA stated that, "[a]mong the tests [used] to determine if a crime involves moral turpitude is whether the act is accompanied by a vicious motive or corrupt mind." Id. at 950. The BIA held that "the intentional transmission of threats" can be used as evidence to show the actor's corrupt mind or vicious motive. Id. at 952.

We have two problems with the IJ's ruling. First, the IJ misapplied the BIA's holding in Ajami. In Ajami, the BIA, while acknowledging that threatening behavior can be an element of a crime involving moral turpitude, expressly held only that "the intentional transmission of threats" could be used as evidence to show the actor's vicious motive or corrupt mind.[5] Id. The IJ's definition, by contrast, does not require intentional conduct, as Ajami mandates. Therefore, we recognize the IJ's definition to be an erroneous application of Ajami.

Second, the IJ's definition jettisons a mens rea requirement, inferring the existence of a vicious motive or corrupt mind based on the actus reas of the offense alone. Yet no court, in any jurisdiction, has gone so far as to rule that threatening behavior alone suffices to show the existence of a vicious motive or corrupt mind. To the contrary, the BIA has expressly stated that an alien's intent is critical to a finding of moral turpitude. E.g., In re Fualaau, 21 I. & N. Dec. 475, 478 (BIA 1996) ("[A]n analysis of an alien's intent is critical to a determination regarding moral turpitude.").

---

[5]We recently approved of the BIA's holding in Ajami and ruled that courts may properly infer a vicious motive or corrupt intent if the alien intentionally transmits threats. Chanmouny, 376 F.3d at 814.

Therefore, we recognize the IJ's "threatening behavior" definition to be a deficient interpretation because it fails to provide a mental state requirement.[6]

For these reasons, we rule that the IJ's "threatening behavior" definition is an unreasonable interpretation of a crime involving moral turpitude.[7]

---

[6]If the IJ had consistently applied its "threatening behavior" definition to each of Reyes-Morales' crimes, he would have been forced to find that Reyes-Morales' fifth-degree assault convictions were also crimes involving moral turpitude. This is because all assaults require, as a constituent element of their offense, the commission of some form or variation of threatening behavior. Yet the IJ did not utilize this analysis. Instead, he properly ruled that Reyes-Morales' assault convictions did not involve moral turpitude because simple assault does not require the offender to act with a vicious motive or corrupt mind. See e.g., In re Perez-Contreras, 20 I. & N. Dec. 615, 618 (BIA 1992).

[7]Even if the IJ had properly applied the Ajami definition, we have serious doubts that Reyes-Morales violated Minn. Stat. § 609.749 with a vicious motive or corrupt mind. We base this conclusion on Chanmouny and Ajami, which both involved statutes similar in operation to Minn. Stat. § 609.749. In Chanmouny, the alien was convicted of "threatening a crime of violence against another person with the purpose of causing extreme fear." Chanmouny, 376 F.3d at 814. Similarly, in Ajami, the alien was convicted of willfully embarking on a course of conduct causing another to feel great fear. Ajami, 22 I. & N. Dec. at 952. In both instances, our court and the BIA ruled that the alien intentionally transmitted threats based on purposeful or willful conduct. Here, however, Reyes-Morales was convicted of intentionally making telephone calls with reason to know that such calls would cause, and did cause, the recipient to feel frightened. A reckless mental state, without more, typically does not give rise to a finding of moral turpitude. See In re Fualaau, 21 I. & N. Dec. at 478 (noting that although the BIA has "issued precedents holding that a conviction involving reckless conduct" can provide the basis for a finding of moral turpitude, the alien's reckless conduct is typically coupled with an aggravating factor).

-11-

## III. CONCLUSION

Accordingly, we grant Reyes-Morales' petition for review, and we order this matter remanded to the BIA with instructions to consider Reyes-Morales' eligibility for special rule cancellation of removal under the NACARA in proceedings consistent with this opinion.

_____