**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

JOSE ROBERTO FERNANDEZ-RUIZ,
                    *Petitioner,*

            v.

ALBERTO R. GONZALES, Attorney
General,

                    *Respondent.*

No. 03-74533

Agency No.
A90-116-400

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

On Remand From En Banc Court
San Francisco, California

Filed November 15, 2006

Before: Stephen Reinhardt, John T. Noonan, and
Ferdinand F. Fernandez, Circuit Judges.

Opinion by Judge Reinhardt

18549

## COUNSEL

Erica K. Rocush, Tucson, Arizona, for the petitioner.

Peter D. Keisler, Assistant Attorney General; David V. Bernal, Assistant Director; and S. Nicole Nardone, Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, Washington D.C., for the respondent.

## OPINION

REINHARDT, Circuit Judge:

This case was remanded to us by the en banc court. We now consider two principal issues: first, whether the petitioner's two misdemeanor domestic assault convictions constitute crimes of moral turpitude rendering him removable under 8 U.S.C. § 1227(a)(2)(A)(ii), and second, whether he is removable under 8 U.S.C. § 1227(a)(2)(A)(iii) because his 1992 theft offense constitutes an aggravated felony as defined in section 1101(a)(43)(G).

### I.   Factual and Procedural Background

Jose Roberto Fernandez-Ruiz, a native and citizen of Mexico, was admitted to the United States as a lawful permanent resident in 1990. In 1992, he pled guilty to the crime of "theft by control of property with a value of $250 or more" in violation of sections 13-1802(A)(1) and (C) of the Arizona Revised Statutes. *See* ARIZ. REV. STAT. § 13-1802(A)(1) & (C) (1992). He was sentenced to two years probation for the "class six open-ended offense." In April 1994, he was sentenced to sixty days in county jail for a probation violation. Two months later, in June 1994, he again violated a term of his probation and was sentenced to "twelve months at half time" in county jail for that violation. At that time, the Arizona court designated the theft offense as a misdemeanor.

Approximately eight years later, in 2002, Fernandez-Ruiz was convicted of misdemeanor domestic violence/assault, in violation of sections 13-1203 and 13-3601 of the Arizona Revised Statutes. *See* Ariz. Rev. Stat. §§ 13-1203 & 3601. In January, 2003, he was again convicted of domestic violence/ assault pursuant to sections 13-1203 and 13-3601. The latter conviction was designated as a "class 2" misdemeanor.

Fernandez-Ruiz was placed in removal proceedings by the issuance of a Notice to Appear, charging him as subject to removal under 8 U.S.C. § 1227(a)(2)(E)(i), for having committed a crime of domestic violence, and under 8 U.S.C. § 1227(a)(2)(A)(ii), for having committed two crimes involving moral turpitude. At a hearing before the Immigration Judge ("IJ") in June, 2003, he admitted all of the factual allegations in the Notice to Appear. Based on these admissions, the IJ sustained the two charges of removability but informed him that he appeared to be eligible for cancellation of removal and instructed him to fill out an application.

Next, Fernandez-Ruiz submitted an application for cancellation of removal. In response, the Department of Homeland Security ("DHS") filed an additional charge of removability, charging him as removable under 8 U.S.C. § 1227(a)(2) (A)(iii) for having been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G).[1] In support of this charge, DHS alleged that he was sentenced to one year in jail in June 1994, as a result of his probation revocation in connection with his theft offense.

At a hearing before the IJ in August, 2003, Fernandez-Ruiz admitted that in 1994 he was sentenced to one year in jail for a probation violation. The IJ then ruled that his 2002 and 2003 domestic violence/assault convictions were both crimes involving moral turpitude. He also concluded that, because of

---

[1]An aggravated felony conviction renders an alien ineligible for cancellation of removal. *See* 8 U.S.C. § 1229b(a)(3).

the one year sentence for violating probation, the theft offense constituted an aggravated felony and relief under former section 212(c) of the Immigration and Naturalization Act ("INA"), 8 U.S.C. § 1182(c), was unavailable in view of the two post-1996 domestic violence convictions. Finally, the IJ concluded that Fernandez-Ruiz was not eligible for cancellation of the order removing him on the basis of the two domestic violence offenses because of his "aggravated felony conviction in 1994." *See* 8 U.S.C. § 1229b(a)(3).

Fernandez-Ruiz appealed the IJ's decision. In the opinion it issued, the BIA adopted the IJ's decision, and offered, as well, its own reasons for rejecting Fernandez-Ruiz's arguments. The BIA found that both the domestic violence/assault convictions constituted crimes of moral turpitude and were based on crimes of domestic violence. The BIA also found that the theft offense qualified as an aggravated felony. As a result, the BIA concluded that Fernandez-Ruiz was eligible for neither a section 212(c) waiver nor cancellation of removal and ordered him removed to Mexico.

We initially affirmed, concluding, on the basis of our earlier decision in *United States v. Ceron-Sanchez*, 222 F.3d 1169, 1172-73 (9th Cir. 2000), that Fernandez-Ruiz's 2003 domestic violence/assault conviction constituted a crime of violence under 18 U.S.C. § 16(a), and therefore rendered him removable under 8 U.S.C. § 1227(a)(2)(E)(i). *See Fernandez-Ruiz v. Gonzales*, 410 F.3d 585, 587-88 (9th Cir. 2005).[2] However, on the panel's own motion, the court ordered rehearing en banc in order to resolve an intra-circuit conflict as to whether, under the Supreme Court's recent decision in

---

[2]With respect to the crime of violence issue, before this court the government relied only on the 2003 conviction and not on the similar 2002 conviction. That it did so is of no consequence as a decision in its favor on the 2003 offense would permit his removal for having committed a crime of violence and an adverse decision would preclude his removal on the crime of violence ground with respect to both convictions.

*Leocal v. Ashcroft*, 543 U.S. 1 (2004), crimes involving the reckless use of force can qualify as crimes of violence. *Compare Lara-Cazares v. Gonzales*, 408 F.3d 1217, 1220 (9th Cir. 2005) (relying on *Leocal* to hold that state DUI offense with a mens rea of gross negligence did not qualify as a crime of violence because § 16(a) "suggests a higher degree of intent than negligent or merely accidental conduct"), *with United States v. Hermoso-Garcia*, 413 F.3d 1085, 1089 (9th Cir. 2005) (relying on *Ceron-Sanchez* to hold that second-degree assault statute requiring "the reckless infliction of bodily harm" constitutes a crime of violence).

The en banc court reversed the BIA's determination that Fernandez-Ruiz was subject to removal under 8 U.S.C. § 1227(a)(2)(E)(i), holding that his 2003 misdemeanor domestic violence/assault conviction was not a crime of violence because, under *Leocal*, in order "to constitute a federal crime of violence an offense must involve the intentional use of force against the person or property of another." *Fernandez-Ruiz v. Gonzales*, No. 03-74533, slip op. 17872 (9th Cir. 2006) (en banc). It then remanded the case to this three judge panel to decide the remainder of the issues. We now decide whether Fernandez-Ruiz is removable on the basis of the two remaining charges in the order of removal: that, under 8 U.S.C. § 1227(a)(2)(A)(ii), he has been convicted of "two or more crimes involving moral turpitude," and that, under 8 U.S.C. § 1227(a)(2)(A)(iii), his 1992 theft offense constituted an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G). *See id*. at 17878.

## II.  Jurisdiction and Standard of Review

The en banc court adopted the portion of this panel's earlier opinion which held that under section 106(a)(1)(A)(iii) of the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 231, "we are no longer barred by § 1252(a)(2)(C) from reviewing Fernandez-Ruiz's petition on account of his past convictions." *Fernandez-Ruiz*, slip op. at 17858 (quoting *Fernandez-Ruiz v.*

*Gonzales*, 431 F.3d at 587). Accordingly, we have jurisdiction to review the petition for the reasons set forth in that portion of our previous opinion.

Whether a state statutory crime necessarily involves moral turpitude is a question of law that we review de novo. *Carty v. Ashcroft*, 395 F.3d 1081, 1083 (9th Cir. 2005). Whether a particular offense constitutes an aggravated felony for which an alien is removable is also subject to de novo review. *Rivas-Gomez v. Gonzales*, 441 F.3d 1072, 1074 (9th Cir. 2006).

## III. Discussion

## A. Crime Involving Moral Turpitude

We first consider whether Fernandez-Ruiz's two misdemeanor domestic violence/assault convictions constitute "crimes involving moral turpitude" for purposes of removal. The INA provides: "Any alien who at any time after admission is convicted of *two or more crimes involving moral turpitude*, not arising out of a single scheme of criminal misconduct, . . . is deportable." 8 U.S.C. § 1227(a)(2)(A)(ii) (emphasis added). Accordingly, if one of the two convictions does not constitute a crime of moral turpitude, Fernandez-Ruiz is not removable under section 1227(a)(2)(A)(ii).

To determine whether a specific crime falls within the category of "crimes involving moral turpitude," we apply the categorical and modified categorical approaches set forth in *Taylor v. United States*, 495 U.S. 575 (1990). *See Cuevas-Gaspar v. Gonzales*, 430 F.3d 1013, 1017 (9th Cir. 2005). Under the categorical approach, we must compare "the elements of the statute of conviction to the generic definition, and decide whether the conduct proscribed [by the Arizona statute] is broader than, and so does not categorically fall within, this generic definition." *Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 887 (9th Cir. 2003). Under this approach, "[t]he issue is not whether the actual conduct constitutes a crime

involving moral turpitude, but rather, whether the full range of conduct encompassed by the statute constitutes a crime of moral turpitude." *Cuevas-Gaspar*, 430 F.3d at 1017.

If the statute of conviction is not a categorical match because it criminalizes both conduct that does and does not involve moral turpitude, we apply a "modified" categorical approach "under which we may look beyond the language of the statute to a narrow, specified set of documents that are part of the record of conviction, including the indictment, the judgment of conviction, jury instructions, a signed guilty plea, or the transcript from the plea proceedings." *Tokatly v. Ashcroft*, 371 F.3d 613, 620 (9th Cir. 2004) (internal quotation marks omitted). We may not, however, "look beyond the record of conviction itself to the particular facts underlying the conviction." *Id.* If the record of conviction that is introduced at the hearing before the IJ is not sufficient to establish that the offense qualifies as a basis for removal, "the government has not met its burden of proving that the conviction constitutes a predicate offense, and the conviction may not be used as a basis for removal." *Id.* at 620-21; *see also Ferreira v. Ashcroft*, 390 F.3d 1091, 1095 (9th Cir. 2004) ("If the record of conviction does not establish that the offense the petitioner committed qualifies as an aggravated felony, the government has not met its burden of proving that the defendant committed an aggravated felony.").

Here, the BIA concluded that both of Fernandez-Ruiz's convictions under Arizona Revised Statutes sections 13-1203 and 13-3601, were crimes of moral turpitude. We examine the BIA's holdings with regard to each conviction in turn, bearing in mind that *both* offenses must qualify in order for this ground of removability to be sustained. *See* 8 U.S.C. § 1227(a)(2)(A)(ii).

### 1.   The 2003 Class 2 Misdemeanor Assault Conviction

Section 13-1203(A), Arizona's misdemeanor assault statute, provides that a person commits assault by:

1. Intentionally, knowingly or recklessly causing any physical injury to another person; or

2. Intentionally placing another person in reasonable apprehension of imminent physical injury; or

3. Knowingly touching another person with the intent to injure, insult or provoke such person.

ARIZ. REV. STAT. § 13-1203(A)(1)-(3). Section 13-3601(A), the other statute under which Fernandez-Ruiz was convicted, defines "domestic violence" as including several crimes, including misdemeanor assault as defined in section 13-1203, if the relationship between the victim and the defendant is one of, *inter alia*, "persons residing or having resided in the same household."

[1] Fernandez-Ruiz's 2003 domestic assault conviction was designated a "class 2" misdemeanor, which is defined as assault committed *recklessly* pursuant to section 13-1203(A)(1) or assault pursuant to section 13-1203(A)(2). *See id.* § 13-1203(B). Assault committed recklessly pursuant to subsection (A)(1) requires "recklessly causing any physical injury to another person," while assault pursuant to subsection (A)(2) requires "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury." *Id.* §§ 13-1203(A)(1), (2). The administrative record before us does not specify whether Fernandez-Ruiz pled guilty to subsection (A)(1) or (A)(2).[3] Accordingly, if either subsection (A)(1) or (A)(2) covers conduct that is not a crime of moral turpitude,

---

[3]The record contains three documents pertaining to Fernandez-Ruiz's 2003 class 2 misdemeanor offense: (1) the charging document which states that he violated "13-3601/13-1203"; (2) a sentencing minute entry which states that he was convicted of "DV/assault Class 2"; and (3) a pro forma plea agreement which states that he pled guilty to "DV/Aslt Class II." None of these documents indicates whether he was convicted under subsection (A)(1) or (A)(2).

then the 2003 conviction cannot, categorically, be such an offense. *See Notash v. Gonzales*, 427 F.3d 693, 697 (9th Cir. 2005) (observing that because record contained no evidence indicating under which section of the statute petitioner was convicted, he is removable only if a conviction under both sections would qualify as a crime involving moral turpitude).

**[2]** The INA does not define "moral turpitude."[4] Absent a statutory definition, courts have defined the term as an "act of baseness or depravity contrary to accepted moral standards." *Grageda v. INS*, 12 F.3d 919, 921 (9th Cir. 1993) (internal quotation marks omitted); *see also Knapick v. Ashcroft*, 384 F.3d 84, 89 (3rd Cir. 2004) (defining moral turpitude as "conduct that is inherently base, vile, or depraved, contrary to the accepted rules of morality and the duties owed other persons, either individually or to society in general"). With regard to the crime of assault, courts generally have held that a conviction for simple assault does not involve moral turpitude. *See, e.g., Reyes-Morales v. Gonzales*, 435 F.3d 937, 945 n.6 (8th Cir. 2006) (observing that simple assault does not involve moral turpitude); *Knapik*, 384 F.3d at 90 (same); *United States ex rel. Zaffarano v. Corsi*, 63 F.2d 757, 759 (2d Cir. 1933) (same).

The statute at issue here, Arizona Revised Statutes section 13-1203, is considered the "simple assault" statute under Arizona law. *See State v. George*, 79 P.3d 1050, 1055 (Ariz. Ct. App. 2003); *see also State v. Sanders*, 68 P.3d 434, 445 (Ariz. Ct. App. 2003) (referring to section 13-1203 as "the simple assault statute"). In Fernandez-Ruiz's case, the BIA correctly observed that "simple assault is not considered to be a crime

---

[4]As another circuit has observed, "Congress did not see fit to state what meaning it attributes to the phrase 'crime involving moral turpitude' . . . The legislative history leaves no doubt, however, that Congress left the term 'crime involving moral turpitude' to future administrative and judicial interpretation." *Cabral v. INS*, 15 F.3d 193, 195 (1st Cir. 1994) (internal citation omitted).

involving moral turpitude." The BIA went on to conclude, however, that "the additional element of the domestic relationship turns the assault into a crime involving moral turpitude." In so holding, the BIA relied on *Grageda*, in which we held that "when a person willfully beats his or her spouse severely enough to cause 'a traumatic condition,' he or she has committed an act of baseness or depravity contrary to accepted moral standards." *Graged*a, 12 F.3d at 922 (quoting CAL. PENAL CODE § 273.5(a)).

For two reasons, the BIA erred in relying on *Grageda*. First, this court's holding in *Grageda* rested explicitly on the fact that the California felony spousal abuse statute at issue in that case required intent to cause harm. *See id.* (emphasizing that the injurious act under California Penal Code "section 273.5(a) must be willful, meaning that the person intended to cause the harm").[5] In fact, in *Grageda*, we concluded that the California felony was a crime of moral turpitude "[b]ecause spousal abuse is an act of baseness or depravity contrary to accepted moral standards, *and willfulness is one of its elements*. . . . it is *the combination* of the base or depraved act *and* the willfulness of the action that makes the crime one of moral turpitude." *Id.* (emphasis added). Thus, for purposes of *Grageda*, while spousal abuse may be a "base or depraved act," that factor alone is not sufficient for a crime to constitute moral turpitude: the act must also be done willfully.[6]

---

[5]Specifically, the California felony spousal abuse statute at issue in *Grageda* prohibited any person from "*willfully* inflict[ing] upon a person who is his or her spouse, former spouse, cohabitant, former cohabitant, or the mother or father of his or her child, corporal injury resulting in a traumatic condition, . . . ." CAL. PENAL CODE § 273.5(a) (emphasis added).

[6]The BIA applied *Grageda* correctly in *In re Tran*, 21 I. & N. Dec. 291 (BIA 1996). There, the BIA concluded that the "infliction of bodily harm upon a person with whom one has [ ] a familial relationship is an act of depravity which is contrary to accepted moral standards. *When such act is committed willfully*, it is an offense that involves moral turpitude." *Id.* at 294 (emphasis added) (internal citation omitted). In other cases it was less faithful to our decision. *See, e.g., In re Fualaau*, 21 I. & N. Dec. 475, 478 (BIA 1996) (stating that an assault involving a *reckless* state of mind is a crime of moral turpitude if it results in "the infliction of serious bodily injury").

Indeed, this circuit's precedent generally requires "willfulness" or "evil intent" in order for a crime to be classified as one involving moral turpitude. In *Guerrero de Nodahl v. INS*, a case upon which we relied in deciding *Grageda*, we held that a conviction under California's felony child abuse statute that prohibited "*willfully* inflict[ing] upon any child any cruel or inhuman corporal punishment or injury resulting in a traumatic condition," involved moral turpitude. 407 F.2d 1405, 1406 n.1 (9th Cir. 1969) (emphasis added) (quoting California Penal Code § 273d). In *Guerrero de Nodahl*, we observed that inflicting such injury upon a child "is so offensive to American ethics that the fact that it was done *purposely or willingly* . . . ends debate on whether moral turpitude was involved." *Id.* at 1406-07 (emphasis added); *see also, e.g., Gonzalez-Alvarado v. INS*, 39 F.3d 245, 246 (9th Cir. 1994) ("A crime involving the *willful* commission of a base or depraved act is a crime involving moral turpitude, . . . .") (emphasis added); *Goldeshtein v. INS*, 8 F.3d 645, 648 (9th Cir. 1993) (holding that structuring financial transactions to avoid currency reports is not a crime of moral turpitude because, *inter alia*, "*evil intent*, such as intent to defraud is not necessarily an essential element of the crime") (emphasis added) (internal quotation marks omitted); *Hirsch v. INS*, 308 F.2d 562, 567 (9th Cir. 1962) (holding that making false statements to a federal agency "is not necessarily a crime involving moral turpitude" because it "does not necessarily involve *evil intent*") (emphasis added). Other circuits similarly emphasize that willfulness is critical to a moral turpitude determination. *See generally Michel v. INS*, 206 F.3d 253, 263 (2d Cir. 2000) ("[C]orrupt scienter is the touchstone of moral turpitude."); *see also Reyes-Morales*, 435 F.3d at 945 n.6 (stating that simple assault is not a crime of moral turpitude because it "does not require the offender to act with a vicious motive or corrupt mind"); *Chanmouny v. Ashcroft*, 376 F.3d 810, 814-15 (8th Cir. 2004) (observing that simple assault is not a crime of moral turpitude because it "typically is a general intent crime, and it is thus different in character from those offenses

that involve a vicious motive, corrupt mind, or evil intent")
(internal quotation marks omitted).

[3] Although a finding of willfulness and/or evil intent is
necessary in order to establish moral turpitude, Arizona's
class 2 misdemeanor assault does not require a willful or
intentional act. Rather, one can be convicted under subsection
(A)(1) for "*recklessly* causing any physical injury to another
person." ARIZ. REV. STAT. § 13-1203(A)(1) (emphasis added).
As the en banc court observed, "reckless conduct as defined
by Arizona law is not purposeful." *Fernandez-Ruiz*, slip op.
at 17868 (citing ARIZ. REV. STAT. § 13-105(c)).[7] Because
spousal abuse without the additional element of willfulness is
not a crime involving moral turpitude, and because
Fernandez-Ruiz was convicted of an offense that does not
require willfulness, his Arizona class 2 misdemeanor assault
conviction does not, for this reason alone, categorically qual-
ify as a crime of moral turpitude.

[4] Second, as we recently explained in *Galeana-Mendoza
v. Gonzales*, 2006 WL 2846379, *5 (9th Cir. 2006), *Grageda*
stands only for the proposition that "when a person beats his
or her spouse *severely enough to cause 'a traumatic condi-
tion,'* he or she has committed an act of baseness or depravity
contrary to accepted moral standards." *Id.* (quoting *Grageda*,
12 F.3d at 922 (discussing CAL. PENAL CODE § 273.5(a)))
(emphasis added). It does *not* suggest that a spousal contact

---

[7]Arizona Revised Statutes section 13-105(c) defines "recklessly" to
mean:

> . . . with respect to a result or to a circumstance described by a
> statute defining an offense, that a person is aware of and con-
> sciously disregards a substantial and unjustifiable risk that the
> result will occur or that the circumstance exists. The risk must be
> of such nature and degree that disregard of such risk constitutes
> a gross deviation from the standard of conduct that a reasonable
> person would observe in the situation. A person who creates such
> a risk but is unaware of such risk solely by reason of voluntary
> intoxication also acts recklessly with respect to such risk.

that causes minor injury or a spousal threat that results in no physical injury constitutes a crime of moral turpitude. Rather, the California spouse abuse and child abuse statutes that we held to involve moral turpitude in *Grageda* and *Guerrero de Nodahl* both required the willful infliction of bodily "injury *resulting in a traumatic condition*." *Grageda*, 12 F.3d at 921 (quoting CAL. PENAL CODE § 273.5(a)) (emphasis added); *Guerrero de Nodahl*, 407 F.2d at 1406 n.1 (quoting CAL. PENAL CODE § 273d) (emphasis added).

**[5]** Here, Arizona's class 2 misdemeanor assault merely requires "recklessly causing *any* physical injury to another person," *or* "placing another person in reasonable apprehension of imminent physical injury." ARIZ. REV. STAT. §§ 13-1203(A)(1), (2) (emphasis added).[8] Subsection (A)(2) contains absolutely no element of injury whatsoever, as it prohibits conduct that merely places another person "in reasonable apprehension of" physical injury. *Id.* § 13-1203(A)(2). Accordingly, not only does a conviction under Arizona's Class 2 misdemeanor assault statute not require "beat[ing] [one's] spouse *severely enough to cause a traumatic condition*," *Grageda*, 12 F.3d at 922 (emphasis added), it does not require inflicting bodily injury of *any* kind. The BIA thus overreads *Grageda*; our decision there does not suggest that physical contacts that result in the most minor of injuries or threats that cause no injury at all involve moral turpitude. A statute encompassing such conduct includes within it acts that are not necessarily base, vile or depraved.

---

[8]Indeed, the Arizona legislature has provided a tiered structure of punishment for assault based on the severity of the injury, distinguishing between "simple assault" (the statute we consider here) which causes "*any* injury to another person," or "plac[es] another person in reasonable apprehension of imminent physical injury" and "aggravated assault" which involves, *inter alia*, causing "*serious* physical injury to another." *Compare* ARIZ. REV. STAT. §§ 13-1203(A)(1), *with* § 13-1204(A)(1) (emphasis added); *see also George*, 79 P.3d at 1055.

**[6]** In sum, Arizona's class 2 misdemeanor assault offense lacks two elements, each of which was crucial to our holding in *Grageda*: a conviction for a class 2 offense requires neither willful conduct nor conduct resulting in bodily injury that is more than insubstantial. A simple assault statute which permits a conviction for acts of recklessness, or for mere threats, or for conduct that causes only the most minor or insignificant injury is not limited in scope to crimes of moral turpitude. For similar reasons, we recently held in *Galeana-Mendoza* that a conviction under California's domestic battery statute, CAL. PENAL CODE § 234(e), does not, under the categorical approach, constitute a crime of moral turpitude. 2006 WL 2846379, *6. Because the offenses set forth in Arizona's battery statute, sections 13-1203(A)(1) and (A)(2), likewise include conduct that does not necessarily involve moral turpitude, Fernandez-Ruiz's class 2 misdemeanor offense cannot, under the categorical approach, constitute a crime involving moral turpitude.

**[7]** Moreover, we cannot apply the modified categorical approach because the record does not contain any "documentation or judicially noticeable facts that clearly establish that the conviction is a [crime of moral turpitude]." *United States v. Hernandez-Hernandez*, 431 F.3d 1212, 1217 (9th Cir. 2005) (internal quotation marks omitted). As described *supra* note 2, the documents in the record pertaining to the 2003 conviction demonstrate only that Fernandez-Ruiz was convicted of Class 2 misdemeanor domestic violence/assault pursuant to sections 13 1203 and 13-3601. Those documents do not narrow his offense or show that he "pled guilty to elements that constitute a crime involving moral turpitude." *Cuevas-Gaspar*, 430 F.3d at 1020. Accordingly, the government has failed to meet its burden of proving that the offense of which Fernandez-Ruiz was convicted in 2003 "constitutes a predicate offense, and the conviction may not be used as a basis for removal." *Tokatly*, 371 F.3d at 620-21; *see also Notash*, 427 F.3d at 699 (internal quotation marks omitted) (concluding that because "none of the documents that may be

examined under the modified categorical approach are in the record," the government "failed to meet its burden of proving that the offense for which [the petitioner] was convicted constitutes a predicate offense").

## 2. The 2002 Misdemeanor Assault Conviction

Even if Fernandez-Ruiz's 2003 misdemeanor domestic assault conviction did constitute a crime involving moral turpitude (and we hold that it does not), the INA requires that a person be "convicted of *two* or more crimes involving moral turpitude," and it is clear that the 2002 conviction cannot qualify as such. 8 U.S.C. § 1227(a)(2)(A)(ii) (emphasis added).

**[8]** The record does not specify under which subsection of section 13-1203(A) Fernandez-Ruiz was convicted in 2002.[9] Accordingly, if *any* of the three subsections in section 13-1203(A) does not involve moral turpitude, then his 2002 conviction does not qualify as a crime of that nature.[10] *See Notash*, 427 F.3d at 697.

**[9]** Subsection (A)(3) proscribes "knowingly touching another person with the intent to injure, insult or provoke such

---

[9]The only evidence in the administrative record pertaining to the 2002 conviction is a sentencing minute entry that describes the violation as "DV Aslt." The Notice to Appear issued by DHS alleged that the 2002 conviction was "for the offense of Domestic Violence/Assault in violation of ARS §§ 13-1203;13-3601." Fernandez-Ruiz admitted that allegation as charged when he appeared before the Immigration Judge in June, 2003.

[10]We note that the en banc court "infer[red]" that Fernandez-Ruiz's 2002 conviction constituted a "class three" misdemeanor because he was sentenced to thirty days in jail for this offense, and under Arizona law, a "class three" misdemeanor is punishable by a maximum of thirty days imprisonment. *See Fernandez-Ruiz*, slip op. at 17857 (citing ARIZ. REV. STAT. § 13-707(A)). Assault committed pursuant to section 13-1203(A)(3) is a "class three" misdemeanor under the Arizona assault statute. *See* ARIZ. REV. STAT. § 13-1203(B). As we explain below, subsection (A)(3) covers a range of conduct that does not involve moral turpitude.

person." ARIZ. REV. STAT. § 13-1203(A)(3).[11] As the plain text of the provision makes clear, not only does a conviction under subsection (A)(3) not require causing serious bodily injury, it does not require a physical injury of *any* kind. *See In re Jeremiah T.*, 126 P.3d 177, 180 (Ariz. Ct. App. 2006) (stating that "subsection (A)(3) requires touching but not resultant injury"). Subsection (A)(3) proscribes a range of conduct that is not necessarily "inherently base, vile, or depraved, and contrary to accepted rules of morality." *Tseung Chu v. Cornell*, 247 F.2d 929, 934 (9th Cir. 1957); *see also Grageda*, 12 F.3d at 921. Indeed, it is quite obvious that the act of "touching" one's spouse in order to "insult" or "provoke" her can encompass acts that are a far cry from the conduct at issue in *Grageda* and, more important, from the type of conduct that can fairly be labeled "moral turpitude." *See Grageda*, 12 F.3d at 922. For example, a husband who inadvisedly pats his wife on the rear end and says, "You could stand to lose a little weight, fatso," could be guilty under subsection (A)(3) of "knowingly touching [her] with the intent to . . . insult or provoke [her]." Because subsection (A)(3) plainly covers conduct that may be undesirable and unacceptable but that does not constitute "baseness or depravity contrary to accepted moral standards," *Guerrero de Nodahl*, 407 F.2d at 1406, Fernandez-Ruiz's 2002 conviction is not, under the categorical test, for a crime involving moral turpitude. *Cf. Rodriguez-Herrera v. INS*, 52 F.3d 238, 240 (9th Cir. 1995) (holding that Washington crime of "malicious mischief" does not involve moral turpitude because its reach "extends to include pranksters with poor judgment").

[10] Nor is the modified categorical approach of any assistance to the government in its effort to establish to prove that the offense of which Fernandez-Ruiz was convicted consti-

---

[11]Under Arizona law, the offense described in subsection (A)(3) "is a less serious offense than the offense described in § 13-1203(A)(1) and a lower class of misdemeanor." *In re Jeremiah T.*, 126 P.3d 177, 180 (Ariz. Ct. App. 2006).

tuted a crime of moral turpitude. The documents in the record relating to the 2002 conviction establish only that he pled guilty to a violation of sections 13-1203 and 13-3601. *See supra* note 9. Thus, as with the 2003 conviction, *see supra* p. 18565, the evidence in the record as to the 2002 offense does not demonstrate that Fernandez-Ruiz "pled guilty to elements that constitute a crime involving moral turpitude." *Cuevas-Gaspar*, 430 F.3d at 1020.

[11] Because both Fernandez-Ruiz's 2002 and 2003 Arizona misdemeanor domestic assault convictions do not qualify as crimes of moral turpitude, the two convictions cannot justify his removal under 8 U.S.C. § 1227(a)(2)(A)(ii).

## B. Aggravated Felony

[12] Having concluded that Fernandez-Ruiz is not removable on the ground that he committed two crimes involving moral turpitude, we must now review the BIA's determination that he is removable under 8 U.S.C. § 1227(a)(2)(a)(iii) because he has been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43)(G).[12] To qualify as an aggravated felony, Fernandez-Ruiz's theft conviction must fit within the definition of "a theft offense . . . for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(G).

Fernandez-Ruiz argues that his theft conviction does not constitute an aggravated felony for two reasons. First, he con-

---

[12]In our earlier opinion, we examined the question of Fernandez-Ruiz's eligibility for cancellation of removal in light of his 1994 theft conviction. *See Fernandez-Ruiz*, 410 F.3d at 588. We stated, however, that we would not resolve the question of his removability under 8 U.S.C. § 1227(a)(2)(A)(iii) for being an aggravated felon. *See id.* at n.2. The en banc court has now remanded to us the remaining issues. *See Fernandez-Ruiz*, slip op. at 17878. In order to fulfill that assignment, we examine fully the question whether the theft conviction at issue constituted an aggravated felony for which he is removable.

tends that his conviction does not fit within the definition of a "theft offense" under the federal statute. As to that point, he is wrong. He was convicted of the crime of theft: that is, knowingly, and without lawful authority, controlling the property of another with the intent to deprive that person of it. *See* ARIZ. REV. STAT. § 13-1802(A)(1) & (C) (1992). The crime is, categorically, a "theft offense." *See Huerta-Guevara v. Ashcroft*, 321 F.3d 883, 886-87 (9th Cir. 2003); *United States v. Corona-Sanchez*, 291 F.3d 1201, 1204-05 (9th Cir. 2002) (en banc). As we noted in our earlier opinion, *Fernandez-Ruiz*, 410 F.3d at 588, two apparent linguistic differences exist between the Arizona statute and the federal theft statute. Neither constitutes a material difference for purposes of the categorical analysis. First, Arizona's requirement that the taking occur "without lawful authority," is, if anything, narrower than the federal law's requirement that the taking be "without consent." *Compare* ARIZ. REV. STAT. § 13-802(A)(1) & (C) (1992), *with Corona-Sanchez*, 291 F.3d at 1203. Second, Arizona's requirement of "intent to deprive" appears in a criminal statute, and thus is identical to the federal requirement of "criminal intent to deprive." *Id.* Accordingly, the Arizona theft statute is, categorically, a theft offense.

**[13]** Second, Fernandez-Ruiz contends that his conviction does not qualify as an aggravated felony because it was not an "offense for which the term of imprisonment [was] at least one year." 8 U.S.C. § 1101(a)(43)(G). Specifically, he argues that the one-year sentence imposed in 1994 is unlawful on its face because at the time the Arizona court imposed the sentence, it designated his theft conviction a misdemeanor, and under Arizona law the maximum term of imprisonment for a misdemeanor is, and was at the time, six months. *See* ARIZ. REV. STAT. § 13-707. To support this claim, he asserts that the Arizona Superior Court issued a minute entry on June 30, 2004, which acknowledged that the sentence imposed on him ten years earlier, in June 1994, was illegal. The minute entry is not in the record before us. Nor could this question have been raised during the earlier BIA proceedings because the

Arizona court entered the minute entry over six months after the BIA rendered its decision. Under these circumstances, we conclude that the proper disposition is to remand the case to the BIA for it to consider in the first instance whether Fernandez-Ruiz's 1994 sentence is illegal on its face, and, if so, whether he may nevertheless be removed as an aggravated felon.[13] *See Velezmoro v. Ashcroft*, 362 F.3d 1231, 1233-34 (9th Cir. 2004) (remanding to the BIA to consider in the first instance whether petitioner continues to be barred from applying for adjustment of status); *see also INS v. Ventura*, 537 U.S. 12, 17 (2002) (per curiam) (remanding "changed circumstances" issue to the BIA to give the agency "the opportunity to address the matter in the first instance").

## C. Eligibility for Section 212(c) Relief

**[14]** Although section 212(c) waivers were eliminated in 1996 by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") § 304(b), the waiver "remains available for aliens . . . whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for [a § 212(c) waiver] at the time of their plea under the law then in effect." *INS v. St. Cyr*, 533 U.S. 289, 326 (2001). Prior to 1996, an alien could qualify for section 212(c) relief unless he was convicted of an aggravated felony *and* sentenced to a term of imprisonment of at least *five years*. *See United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1044 (9th Cir. 2004); *United States v. Gonzalez-Valerio*, 342 F.3d 1051, 1053-54 (9th Cir. 2003).

---

[13]Fernandez-Ruiz argues that because the maximum possible sentence he could have received for the theft offense was six months, his conviction cannot be considered a "theft offense . . . for which the term of imprisonment [is] at least one year" under 8 U.S.C. § 1101(a)(43)(G). *See Corona-Sanchez,* 291 F.3d at 1210 (holding that because the maximum possible sentence for the violation was six months, the petitioner's conviction was not an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(G)).

**[15]** Because Fernandez-Ruiz pled guilty to his theft offense prior to 1996 and he was not sentenced to a term of at least five years, he is eligible for a waiver of inadmissibility as to his theft offense under former section 212(c) of the INA, if he is not otherwise barred. The IJ held that he was not eligible for a section 212(c) waiver. He expressly stated in his decision, however, that he "would have found that [Fernandez-Ruiz] was eligible for 212(c) relief *but for*" the 2002 and 2003 domestic assault convictions which, he concluded, constituted crimes of moral turpitude and rendered him removable and thus ineligible for a 212(c) waiver. In light of our decision that neither the 2002 nor the 2003 conviction qualifies as a crime of moral turpitude, and that Fernandez-Ruiz is therefore not removable under 8 U.S.C. § 1227(a)(2)(A)(ii), it is apparent that he is eligible for section 212(c) relief.[14]

## IV.   Conclusion

We conclude that neither of Fernandez-Ruiz's two convictions under Arizona Revised Statutes sections 13-1203 and 13-3601 constitutes a crime involving moral turpitude. Arizona's misdemeanor assault statute requires neither the willful intent nor the type of injury that is necessary for domestic assault to be, categorically, an offense involving moral turpitude. Accordingly, Fernandez-Ruiz is not removable pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii). As to the aggravated felony ground of removal, we remand to the BIA to consider in the first instance whether Fernandez-Ruiz's 1994 one-year sentence is unlawful on its face and thus cannot support a charge of removability as an aggravated felon. Finally, we hold that Fernandez-Ruiz was eligible for section 212(c) relief as of the time of the BIA ruling.

---

[14]The availability of such relief would, of course, only be relevant should the BIA determine that the theft offense constitutes an aggravated felony. Also, we do not foreclose an adverse determination as to such relief based on any offenses committed after the time of the BIA decision in this matter.

PETITION GRANTED IN PART; REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.