**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| EDGAR LEAL, *Petitioner*, v. ERIC H. HOLDER, JR., Attorney General, *Respondent*. | No. 12-73381 Agency No. A096-312-954 OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
October 7, 2014—Phoenix, Arizona

Filed November 6, 2014

Before: Dorothy W. Nelson, Barry G. Silverman,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Nelson

## SUMMARY[*]

### Immigration

The panel denied Edgar Leal's petition for review of the three-judge published Board of Immigration Appeals' decision, *Matter of Leal*, 26 I. & N. Dec. 20 (BIA 2012), which held that Leal's conviction for felony endangerment, in violation of Arizona Revised Statute § 13-1201, is a categorical crime involving moral turpitude.

The panel held that the BIA reasonably determined that ARS § 13-1201 is a crime involving moral turpitude, and the panel accordingly gave *Chevron* deference to the BIA's decision. The panel also held that the BIA reasonably determined that excessive voluntary intoxication, combined with the creation of a substantial, actual risk of imminent death of another person, constitutes morally turpitudinous conduct.

## COUNSEL

Kara Lee Hartzler (argued), San Diego, California; Nicomedes E. Suriel, Law Office of Nicomedes E. Suriel, P.L.L.C., Phoenix, Arizona, for Petitioner.

C. Frederick Sheffield (argued), Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## OPINION

NELSON, Senior Circuit Judge:

Edgar Leal ("Leal") petitions for review of the Board of Immigration Appeals' ("BIA") dismissal of his appeal of a final order of removal.  The BIA held that Leal had been convicted of a crime involving moral turpitude ("CIMT") and was thus ineligible for cancellation of removal.  We hold that the BIA reasonably determined that felony endangerment in Arizona is a CIMT and thus deny the petition for review.

## I.  Background

Leal is a native and citizen of Mexico, born in Culiacan, Mexico, on October 5, 1978, who entered the United States on January 1, 1990, without being admitted or paroled.  Leal has four U.S. citizen children, and his spouse[1] and parents are lawful permanent residents of the United States who reside in Arizona.

On March 12, 2007, Leal pled guilty to, and was subsequently convicted of, felony endangerment under Arizona Revised Statute § 13-1201 and misdemeanor driving under the influence of intoxicating liquor ("DUI") under Arizona Revised Statute § 28-1381(A)(1).  The Department of Homeland Security ("DHS") thereafter initiated removal proceedings against Leal, charging him with removability as a person who is present in the United States without having been admitted or paroled under 8 U.S.C. § 1182(a)(6)(A)(I).

---

[1] Leal's brief states that his spouse is a naturalized U.S. citizen, but the record suggests that she is a lawful permanent resident.  Leal also claims to have a U.S. citizen brother, but the record does not support this claim.

Once in removal proceedings, Leal admitted he had entered the United States without inspection and conceded removability, but he indicated that he would seek cancellation of removal under 8 U.S.C. § 1229b(b)(1).

Prior to a hearing on the merits of his request for cancellation of removal, Leal filed a brief on the issue, to which DHS responded by filing a Motion to Pretermit Leal's application for cancellation of removal. In June 2010, the Immigration Judge ("IJ") granted DHS's Motion to Pretermit based on Leal's conviction for felony endangerment in Arizona, finding the crime was a CIMT that rendered Leal ineligible for cancellation of removal. The IJ also ordered that Leal be removed from the United States to Mexico.

Leal timely appealed the IJ's decision to the BIA. The BIA dismissed Leal's appeal in a published opinion, holding felony endangerment under Arizona Revised Statute § 13-1201 to be a CIMT. Specifically, the BIA relied on the Attorney General's opinion in *Matter of Silva-Trevino*, 24 I. & N. Dec. 687 (Attorney Gen. 2008), in determining that felony endangerment in Arizona requires "some form of scienter" and "reprehensible conduct." The BIA rejected Leal's contention that felony endangerment lacked the requisite scienter based on recklessness in Arizona encompassing unawareness of risk due to voluntary intoxication and that the conduct was not sufficiently reprehensible based on the lack of actual harm. Following the BIA's opinion, Leal filed his timely petition for review with this court.

## II. Standard of Review

While 8 U.S.C. § 1252(a)(2)(C) precludes judicial review of a "final order of removal against a [person] who is removable" for committing a criminal offense, we have jurisdiction to review questions of law. *Latter-Singh v. Holder*, 668 F.3d 1156, 1159 (9th Cir. 2012). "Whether a conviction is for a CIMT is a question of law." *Olivas-Motta v. Holder*, 746 F.3d 907, 908 (9th Cir. 2013).

"The determination whether a conviction under a criminal statute is categorically a crime of moral turpitude involves two steps, to which different standards of review apply." *Castrijon-Garcia v. Holder*, 704 F.3d 1205, 1208 (9th Cir. 2013) (internal quotation marks, bracket and citation omitted). First, we determine the elements of the underlying crime, reviewing de novo the BIA's conclusions. *Vinh Tan Nguyen v. Holder*, 763 F.3d 1022, 1027 (9th Cir. 2014). Second, we "compare the elements of the statute of conviction to the generic definition of a crime of moral turpitude and decide whether the conviction meets that definition." *Ceron v. Holder*, 747 F.3d 773, 778 (9th Cir. 2014) (en banc) (internal quotation marks and citation omitted). We defer to the BIA's conclusion on this second issue "following the *Chevron* framework if the decision is published or directly controlled by a published decision." *Id.*; *see Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837 (1984). However, if the BIA errs at step one in determining the elements of the underlying crime, "we owe its CIMT analysis at step two no deference." *Hernandez-Cruz v. Holder*, 651 F.3d 1094, 1106 (9th Cir. 2011).

## III.    Discussion

### A.  Felony Endangerment in Arizona

We turn to the first step of our analysis: determining the elements of the statute of conviction. Leal was convicted of felony endangerment under Arizona Revised Statute § 13-1201 (2006), which provided as follows:

> A. A person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury.
>
> B. Endangerment involving a substantial risk of imminent death is a class 6 felony. In all other cases, it is a class 1 misdemeanor.

Based on the clear language of the statute, felony endangerment requires the perpetrator to endanger another person recklessly with a substantial risk of imminent death.[2] Further, the Arizona Supreme Court has made clear that "substantial risk" for purposes of felony endangerment requires that the victim be placed "in *actual* substantial risk of imminent death." *State v. Carreon*, 107 P.3d 900, 909 (Ariz. 2005) (en banc) (internal quotation marks and citation omitted).

---

[2] Accordingly, our decision and analysis are limited to felony endangerment and do not reach misdemeanor endangerment, i.e. risk of physical injury.

Arizona has also statutorily defined the mens rea of recklessness as follows:

> "Recklessly" means, with respect to a result or to a circumstance described by a statute defining an offense, that a person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. The risk must be of such nature and degree that disregard of such risk constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation. A person who creates such a risk but who is unaware of such risk solely by reason of voluntary intoxication also acts recklessly with respect to such risk.

Ariz. Rev. Stat. § 13-105(9)(c) (2006).[3] The statute contemplates two possible mental states for establishing a reckless mens rea: (1) conscious disregard of a substantial and unjustifiable risk, which constitutes a gross deviation from the standard of conduct of a reasonable person, or (2) unawareness of such risk solely by reason of voluntary intoxication. *Cf. State v. Gallegos*, 870 P.2d 1097, 1107 (Ariz. 1994) (en banc) (explaining the statute "expressly provides that voluntary intoxication will not negate a 'reckless' culpable mental state").

---

[3] The current version of the statute, while retaining identical language, is now found at subsection 10(c). *See* Ariz. Rev. Stat. § 13-105(10)(c) (2014).

Accordingly, the elements of felony endangerment in Arizona are relatively straightforward: the perpetrator must (1) act recklessly so as to (2) put another person in substantial, actual risk of (3) imminent death. While not laid out quite so directly, the BIA correctly identified these elements, and we must therefore determine whether its CIMT analysis of felony endangerment warrants deference under *Chevron*.

## B. Crime Involving Moral Turpitude Analysis

In order to determine whether a crime is categorically a CIMT, we must "compare the elements of the crime to the generic definition of moral turpitude and decide whether the conduct proscribed in the statute is broader than, and so does not categorically fall within, this generic definition." *Turijan v. Holder*, 744 F.3d 617, 620 (9th Cir. 2014) (quoting *Nunez v. Holder*, 594 F.3d 1124, 1129 (9th Cir. 2010)). To find that the statute of conviction is broader than the generic definition of a CIMT, there must be "a realistic possibility . . . that the State would apply its statute" to non-turpitudinous conduct. *Id.* (quoting *Nunez*, 594 F.3d at 1129). This "realistic possibility" can be established "based on factual evidence of actual convictions, on unpublished and nonprecedential opinions, on statutory language and the logic of published opinions, or some combination thereof." *Nicanor-Romero v. Mukasey*, 523 F.3d 992, 1005 (9th Cir. 2008), *overruled on other grounds by Marmolejo-Campos v. Holder*, 558 F.3d 903, 911 (9th Cir. 2009) (en banc).

As our court has repeatedly recognized, the term "moral turpitude" is "'perhaps the quintessential example of an ambiguous phrase.'" *Turijan*, 744 F.3d at 620 (quoting *Marmolejo-Campos*, 558 F.3d at 909). Thus, where the

BIA's decision is a precedential, published opinion—as it is here—we must accept the BIA's interpretation of the INA, so long as it is "a permissible construction of the INA." *Marmolejo-Campos*, 558 F.3d at 913.

In this case, the BIA looked to the "general definition" of a CIMT set forth by the Attorney General in *Silva-Trevino*, 24 I. & N. Dec. at 706 & n.5. In that case, the Attorney General explained that "[a] finding of moral turpitude under the [INA] requires that a perpetrator have committed [a] reprehensible act with some form of scienter." *Id.* Based on that "general definition," the BIA held that felony endangerment required both reprehensible conduct and some form of scienter.

While we have described the Attorney General's attempt to clarify the definition of the term "moral turpitude" as "a welcome effort," *Marmolejo-Campos*, 558 F.3d at 910, and a "clarification of the substantive definition" of the term, *Olivas-Motta*, 746 F.3d at 911, "we have relied on our own generalized definition of 'moral turpitude,'" *Marmolejo-Campos*, 558 F.3d at 910. We have generally defined CIMTs as "crimes that involve either fraud or base, vile, and depraved conduct that shocks the public conscience." *Nunez*, 594 F.3d at 1131 (internal quotation marks, brackets and citation omitted). While our definition is not identical to the Attorney General's, we have explained that our understanding of the term "moral turpitude" for immigration purposes "does not differ materially from the [BIA]'s." *E.g.*, *Marmolejo-Campos*, 558 F.3d at 910; *cf. Pannu v. Holder*, 639 F.3d 1225, 1228–29 (9th Cir. 2011) (remanding to the BIA to determine whether the crime at issue constituted a CIMT under *Silva-Trevino*'s definition of moral turpitude); *Saavedra-Figueroa v. Holder*, 625 F.3d 621, 627 (9th Cir.

2010) (holding crime at issue was not a CIMT as it "does not require any degree of scienter"). For this reason, we reject Leal's argument that the BIA's judgment was erroneous because the BIA relied upon *Silva-Trevino*'s general definition of a CIMT.

The parties in this case have mainly focused on whether Arizona's definition of recklessness suffices to establish the necessary mens rea for a CIMT. However, "both the actus reus and the mens rea must be considered in concert to determine whether the behavior they describe is sufficiently culpable to be labeled morally turpitudinous." *Castrijon-Garcia*, 704 F.3d at 1214 (internal quotation marks and citation omitted). As we recently explained in our en banc decision in *Ceron*:

> [A] finding of moral turpitude involves an assessment of both the state of mind and the level of harm required to complete the offense. Thus, intentional conduct resulting in a meaningful level of harm, which must be more than mere offensive touching, may be considered morally turpitudinous. However, as the level of conscious behavior decreases, i.e., from intentional to reckless conduct, more serious resulting harm is required in order to find that the crime involves moral turpitude. Moreover, where no conscious behavior is required, there can be no finding of moral turpitude, regardless of the resulting harm.

747 F.3d at 783 (quoting *In re Solon*, 24 I. & N. Dec. 239, 242 (BIA 2007)).

In reviewing the crime at issue here, we are satisfied that the BIA reasonably interpreted the INA to hold that felony endangerment in Arizona is a CIMT, and we accordingly defer to the BIA's decision under *Chevron*. Although the crime requires only reckless conduct, the level of harm resulting from the conduct is grave: a substantial, actual risk of imminent death to another person. We agree with the BIA's determination that the creation of a substantial, actual risk of imminent death is sufficiently reprehensible, or in terms of our case law "base, vile, and depraved," to establish a CIMT, even though no actual harm need occur. As our colleagues on the Third Circuit explained, a petitioner's "good fortune in not . . . killing anyone does not change the quality of his actions." *Knapik v. Ashcroft*, 384 F.3d 84, 90 n.5 (3d Cir. 2004).

While the BIA's opinion may be somewhat disjointed in appearing to analyze the mens rea and actus reus as separate prongs of its CIMT determination, a careful review of the opinion makes clear the BIA evaluated the applicable mens rea in the context of the resulting harm at issue. Thus, although the BIA's decision came prior to *Ceron* and did not cite *Solon*, the BIA's analysis properly considered the mens rea and actus reus in combination, and we reject Leal's contrary argument.

As previously noted, Leal argues that because recklessness in Arizona can be predicated upon voluntary intoxication to the point of being unaware of the risk created by one's conduct, reckless crimes in Arizona cannot categorically satisfy the necessary mens rea for a CIMT. We disagree. We have previously explained that certain crimes requiring reckless conduct have been found to be CIMTs based in part on the general requirement of "actual

knowledge of a factor indicating risk of harm and conscious disregard of it." *Uppal v. Holder*, 605 F.3d 712, 718 (9th Cir. 2010). Based on this definition of recklessness, which mirrors the first part of Arizona's definition, we noted that other circuits had specifically found certain endangerment crimes to be CIMTs. *Id.* (citing *Keungne v. U.S. Attorney Gen.*, 561 F.3d 1281, 1286–87 (11th Cir. 2009); *Knapik*, 384 F.3d at 90 n.5); *see also Idy v. Holder*, 674 F.3d 111, 118–19 (1st Cir. 2012) (deferring to the BIA's determination that New Hampshire's reckless conduct statute is a CIMT because "the statute contains both 'reprehensible conduct' and 'some degree of scienter'"). Our explanation of recklessness in *Uppal* applies not only to recklessness born of knowledge or a risk of harm and conscious disregard of that risk, but also to recklessness based on voluntary intoxication.

Under Arizona's definition of recklessness, whether the risk created by an actor's conduct results from conscious disregard of the risk or unawareness of the risk due to voluntary intoxication, the quality of the risk created is the same: it must be that which "constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Ariz. Rev. Stat. § 13-105(9)(c) (2006). As noted by the BIA, the drafters of the Model Penal Code, in similarly defining recklessness to include unawareness of risk based on voluntary intoxication, explained that

> awareness of the potential consequences of excessive drinking on the capacity of human beings to gauge the risks incident to their conduct is by now so dispersed in our culture that it is not unfair to postulate a general equivalence between the risks created by the

conduct of the drunken actor and the risks
created by his conduct in becoming drunk.

Model Penal Code § 2.08 cmt. at 359 (1985). Further, we agree with the drafters' observation—based on the common knowledge that there are degrees of intoxication, rather than just two states of either intoxicated or sober—that there is a "relative rarity of cases where intoxication really does engender unawareness as distinguished from imprudence." *Id.* Thus, where an actor is only mildly intoxicated, his actions may appear negligibly different from those of a sober actor, as the person who has been drinking may still be able to appreciate the risk involved and choose subsequently to disregard it. This is true even though his intoxication may have lessened to some degree his inhibitions and, so, his appreciation of the risk. In the rare circumstance where an actor is so excessively, voluntarily intoxicated as to be entirely unable to appreciate a risk that represents a gross deviation from the conduct of a reasonable person, the actor's conscious decision to become so excessively intoxicated— thus consciously disregarding the well-known risk that he will be impaired to the extent that he cannot consciously understand the risk of his intoxicated conduct—may properly serve as a proxy for conscious disregard of the risk itself. Accordingly, we hold that the BIA reasonably determined that such excessive voluntary intoxication combined with the conduct at issue—creation of a substantial, actual risk of imminent death of another person—constitutes morally turpitudinous conduct.

We find Leal's other arguments to also be without merit. First, Leal argues that recklessness can only serve as a predicate mens rea for a CIMT where there is an "aggravating factor." Leal's argument is based on a line of cases

discussing various forms of aggravated assaults in the context of the CIMT analysis, explaining that there must be "'some aggravating dimension' sufficient to increase the culpability of an assault or battery and so to transform the offense into one categorically a CIMT." *Uppal*, 605 F.3d at 717. However, this is not due to the reckless mens rea involved, but rather because of the underlying conduct; both this court and the BIA have repeatedly stated that simple assault is, in general, not a CIMT. *See, e.g.*, *Nunez*, 594 F.3d at 1137; *Solon*, 24 I. & N. Dec. at 244. It thus follows that, in order for an assault to be considered a CIMT, there must be some additional factor involved in the specific offense to distinguish it from generic simple assault. Endangerment crimes in Arizona, however, are distinct crimes, rather than a form of assault. *State v. Morgan*, 625 P.2d 951, 956 (Ariz. Ct. App. 1981) (explaining that endangerment is not a lesser-included offense of aggravated assault based on the distinct elements required for each crime, namely that endangerment requires actual risk). Further, as explained above, the relevant analysis for a CIMT is measuring the resulting harm with the applicable mens rea, which felony endangerment satisfies.

Finally, Leal argues that felony endangerment encompasses conduct for which the resulting harm is insufficient to qualify as a CIMT. Pointing to his own case, Leal relies on his plea colloquy[4] for the contention that his conduct "equates to simple driving under the influence," and thus is not morally turpitudinous. However, regardless of Leal's interpretation of the factual basis for his conviction in

---

[4] We note that Leal's plea colloquy is not part of the administrative record and thus was not considered below by the IJ or the BIA. We reference it here only to establish the basis of Leal's argument.

his plea colloquy, the simple fact remains that in pleading guilty to felony endangerment, Leal necessarily admitted to the elements of the crime, including the creation of a substantial, actual risk of imminent death to another person.[5] Leal's reliance on other cases fails for this reason as well: whether the conduct at issue appears at first glance to be morally turpitudinous, the fact remains that a jury must unanimously find at trial or the defendant must admit to a plea that the conduct created a substantial, actual risk of imminent death to another person.  For this reason, we are satisfied that there is not a realistic possibility that felony endangerment will be applied to non-turpitudinous conduct.

## IV.    Conclusion

For the above-stated reasons, we hold the BIA's interpretation of the INA to include felony endangerment in Arizona as a CIMT is reasonable, and we defer to the BIA's decision under *Chevron*.  We emphasize, however, that our holding rests largely on the grave resulting harm involved in this crime: a substantial, actual risk of imminent death to another person.  Additionally, as previously noted, our decision applies only to felony endangerment and not misdemeanor endangerment, i.e. risk of physical injury, in Arizona.

**PETITION FOR REVIEW DENIED.**

---

[5] To the extent Leal challenges his conviction for felony endangerment based on an inadequate factual basis, we must reject such argument as a petitioner cannot collaterally attack his criminal conviction in this proceeding.  *Ortega de Robles v. I.N.S.*, 58 F.3d 1355, 1358 (9th Cir. 1995).