**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

JOSE ANTONIO ORTIZ NAREZ,
*Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,
*Respondent*.

Nos. 19-72039
20-71416

Agency No.
A013-623-921

OPINION

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 6, 2021
Pasadena, California

Filed February 16, 2022

Before: Milan D. Smith, Jr., Kenneth K. Lee, and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Lee

## SUMMARY[*]

### Immigration

Denying Jose Ortiz Narez's petition for review of a decision of the Board of Immigration Appeals, the panel held that voluntary manslaughter under California law qualifies as a crime involving moral turpitude (CIMT).

Ortiz entered the United States as a lawful permanent resident, but was later found removable on the ground that he committed two CIMTs not arising out of single scheme of conduct. Ortiz contended that his conviction for voluntary manslaughter under California Penal Code (CPC) § 192(a) was not a CIMT.

Applying the categorical approach, the panel first explained that California defines voluntary manslaughter as the "unlawful killing of a human being without malice . . . upon a sudden quarrel or heat of passion." CPC § 192(a). In turn, the California Supreme Court has construed the statute as requiring some form of culpable mental state—an intent to kill or a conscious disregard for life.

Second, the panel compared CPC § 192(a) to the federal definition of a CIMT, which this court has defined as involving either fraud or base, vile, and depraved conduct that shocks the public conscience. The panel explained that the court considers the requisite state of mind as well as the resulting harm in tandem; as the level of conscious behavior decreases (i.e., from intentional to reckless conduct), more

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

serious resulting harm is required to find that the crime involves moral turpitude. Thus, a crime committed only recklessly requires a more serious harm to qualify as a CIMT. Here, the panel agreed with the BIA that CPC § 192(a) is a CIMT, explaining that the statute only requires recklessness, but the harm—the unlawful killing of a human—stands at the apex.

The panel rejected Ortiz's other claims in a separate memorandum disposition.

**COUNSEL**

Erika Vejar (argued), Vejar Law Firm, San Dimas, California, for Petitioner.

Kristen H. Blosser (argued), Trial Attorney; Anthony P. Nicastro, Assistant Director; Brian Boynton, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C., for Respondent.

**OPINION**

LEE, Circuit Judge:

Under federal immigration law, a non-citizen may be removed from the country if he has been convicted of a "crime involving moral turpitude" (CIMT). 8 U.S.C § 1227(a)(2)(A). The question before us is whether voluntary manslaughter under California law qualifies as a CIMT. We hold that it does because voluntary manslaughter requires the defendant to cause the death of a person with

intent to kill or with conscious disregard for life. We thus deny Jose Ortiz Narez's petition challenging the Board of Immigration's (BIA) final order of removal.[1]

## BACKGROUND

Ortiz entered the United States from Mexico as a lawful permanent resident at a young age. While in this country, Ortiz amassed an extensive juvenile and adult criminal history. Relevant here, he pleaded guilty to voluntary manslaughter in violation of California Penal Code (CPC) § 192(a) in 1984 and was sentenced to six years' imprisonment.[2] Ortiz was also later convicted of corporal punishment or injury of a child in violation of CPC § 273d in 2002.

Under 8 U.S.C. § 1227(a)(2)(A), the Attorney General can order the removal of a non-citizen who either (i) was convicted within five years of entering the United States of a CIMT that may be punishable by a sentence of one year or longer, or (ii) was convicted of two or more CIMTs not arising out of a single scheme of criminal misconduct.

The United States Department of Homeland Security (DHS) served Ortiz with a Notice to Appear charging him with removability because he committed crimes of moral

---

[1] We address and reject Ortiz's other claims in a separate memorandum disposition.

[2] The documents in the record cite California Penal Code § 192.1, but the actual voluntary manslaughter provision at the time of Ortiz's conviction was § 192(1). *See People v. Thomas*, 740 P.2d 419, 423 n.3 (Cal. 1987). It has since been renumbered to § 192(a), but the text "has remained constant since 1872." *Quijada-Aguilar v. Lynch*, 799 F.3d 1303, 1307 (9th Cir. 2015). For clarity, we use the current citation throughout this opinion.

turpitude not arising out of a single scheme of criminal misconduct. DHS alleged that Ortiz was convicted of manslaughter in violation of CPC § 192(a) and corporal punishment or injury of child in violation of CPC § 273d.

Ortiz moved to terminate his removal proceedings. The Immigration Judge (IJ) determined that Ortiz was removable because his convictions for child abuse and voluntary manslaughter were categorically CIMTs. She rejected Ortiz's argument that voluntary manslaughter is not a CIMT, explaining that the BIA "has consistently found voluntary manslaughter to be a CIMT." Because both convictions involved different victims and occurred nearly twenty years apart, the IJ determined that the convictions did not arise out of a single scheme of criminal conduct.

Ortiz appealed the IJ's decision to the BIA. The BIA denied Ortiz's motion to terminate and dismissed his appeal, reiterating that voluntary manslaughter under CPC § 192(a) is a CIMT. Relying on California state cases, the BIA held that voluntary manslaughter—despite not requiring a specific intent to kill—qualifies as a CIMT because it involves moral depravity. *See People v. Lasko*, 999 P.2d 666 (Cal. 2000); *People v. Coad*, 181 Cal. App. 3d 1094, 1107–08 (Cal. Ct. App. 1986); *People v. Parrish*, 170 Cal. App. 3d 336, 350 (Cal. Ct. App. 1985). Ortiz then timely petitioned for review with this court.

## STANDARD OF REVIEW

We review de novo whether a state conviction constitutes a CIMT for removal purposes. *Romero-Mendoza v. Holder*, 665 F.3d 1105, 1107 (9th Cir. 2011).

## ANALYSIS

### I. Voluntary Manslaughter Under California Law Qualifies as a Crime Involving Moral Turpitude.

This court uses a two-step categorical approach to determine whether a conviction qualifies as a CIMT. *Fugow v. Barr*, 943 F.3d 456, 458 (9th Cir. 2019). First, the court determines the elements of the state crime, reviewing de novo the BIA's conclusions. *Vinh Tan Nguyen v. Holder*, 763 F.3d 1022, 1027 (9th Cir. 2014). Second, the court "compare[s] the elements of the statute of conviction to the generic [federal] definition of a crime of moral turpitude and decide[s] whether the conviction meets that definition." *Ceron v. Holder*, 747 F.3d 773, 778 (9th Cir. 2014) (en banc) (internal quotation marks and citation omitted). We give some deference to the BIA's assessment under this second step because of its expertise with this issue.[3]

---

[3] The court gives *Chevron* deference to the BIA's conclusion "if the decision is published or directly controlled by a published decision." *Ceron*, 747 F.3d at 778. Otherwise, we afford only *Skidmore* deference. *See Lezama-Garcia v. Holder*, 666 F.3d 518, 524–25 (9th Cir. 2011). Under *Skidmore*, the measure of deference varies "depend[ing] upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control." *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944). Because the BIA dismissed Ortiz's appeal in an unpublished order and did not rely on a directly controlling decision, we only afford *Skidmore* deference to the BIA's second step analysis.

### A. California requires a culpable mental state—an intent to kill or a conscious disregard for life—for voluntary manslaughter.

The first step of our analysis requires determining the elements of voluntary manslaughter under California law. *See Leal v. Holder*, 771 F.3d 1140, 1144 (9th Cir. 2014). California defines voluntary manslaughter as the "unlawful killing of a human being without malice . . . upon a sudden quarrel or heat of passion." CPC § 192(a). The California Supreme Court, in turn, has construed the voluntary manslaughter statute as requiring some form of culpable mental state—an intent to kill or a conscious disregard for life. *People v. Bryant*, 301 P.3d 1136, 1141 (Cal. 2013).

Latching onto the "without malice" language in the statute, Ortiz argues that California's voluntary manslaughter statute—unlike the federal definition of a crime of moral turpitude—has no scienter or intent requirement. If California does not require scienter for voluntary manslaughter, then it cannot be a CIMT because those crimes generally require some culpable intent. *See Leal*, 771 F.3d at 1146. But California courts have rejected Ortiz's interpretation of the statute. As the California Supreme Court put it, it has "never suggested that [voluntary manslaughter] could be committed without either an intent to kill or a conscious disregard for life." *Bryant*, 301 P.3d at 1141. The statute's reference to "without malice" merely explains that voluntary manslaughter involves mitigating circumstances (*e.g.*, adequate provocation) that negate the malice aforethought required for murder. It does not mean that voluntary manslaughter lacks any culpable mental state. To the contrary, a conscious disregard for life or specific intent to kill is still required. *See id.* at 1142.

In sum, the elements of voluntary manslaughter in California require: (1) a human was killed; (2) the killing was unlawful; (3) the perpetrator of the killing either intended to kill the alleged victim or acted in conscious disregard for life; and (4) the perpetrator's conduct led to the unlawful killing. *See id*. at 1141–42.

### B. Voluntary manslaughter meets the federal definition of a CIMT because it involves the most serious harm—the unlawful death of a person.

The second step of our categorical analysis requires comparing California's elements of voluntary manslaughter with the federal definition of a CIMT. *Fugow*, 943 F.3d at 458. While there is no federal statutory definition of a CIMT, we have defined it as involving "either fraud or base, vile, and depraved conduct that shocks the public conscience." *Id.* (citation omitted).

And when comparing a state statute with the federal definition of a CIMT, we consider the requisite state of mind as well as the resulting harm in tandem. *Leal*, 771 F.3d at 1146. "[A]s the level of conscious behavior decreases, i.e., from intentional to reckless conduct, more serious resulting harm is required in order to find that the crime involves moral turpitude." *Id.* (quoting *Ceron*, 747 F.3d at 783). A crime committed only recklessly thus requires a more serious harm to qualify as a CIMT.

Contrary to Ortiz's assertions, a crime committed recklessly can still qualify as a CIMT. In *Leal*, for example, this court upheld the BIA's determination that an Arizona law barring "recklessly endangering another person with a substantial risk of imminent death" constitutes a CIMT. 771 F.3d at 1144 (quoting Ariz. Rev. Stat. § 13-1201). Even though the offense only required a state of mind of

recklessness, the court found that the "creation of a substantial, actual risk of imminent death is sufficiently reprehensible" to establish a CIMT. *Id.* at 1146. Here, too, California's voluntary manslaughter only requires recklessness, but the harm—the unlawful killing of a human—stands at the apex. We thus agree with the BIA's determination that California's voluntary manslaughter statute qualifies as a CIMT.

Our decision tracks the BIA's prior decisions holding that other states' voluntary manslaughter statutes qualify as CIMTs. For example, in *Matter of Rosario*, the BIA held that Puerto Rico's voluntary manslaughter statute is a CIMT. 15 I. & N. Dec. 416, 416–17 (BIA 1975). Puerto Rico's statute required the "unlawful killing of a human being without malice" for a conviction. *Id.* Rejecting the respondent's argument that "without malice" did not make the offense a CIMT, the BIA reasoned that, under Puerto Rico's law, voluntary manslaughter qualifies as a CIMT. *Id.* at 417.[4]

While we had not directly addressed this issue before, we now hold what is obvious: voluntary manslaughter in

---

[4] *See also, e.g.*, Matter of Sanchez-Linn, 20 I. & N. Dec. 362, 366 (BIA 1991) (noting that voluntary manslaughter is a CIMT); *Matter of Wojtkow*, 18 I. & N. Dec. 111, 113 (BIA 1981) (holding that New York's voluntary manslaughter statute is a CIMT); *Matter of Ghunaim*, 15 I. & N. Dec. 269, 269 (BIA 1975) (holding that Ohio's voluntary manslaughter statute is a CIMT); *Matter of Ptasi*, 12 I. & N. Dec. 790, 791 (BIA 1968) (holding that Connecticut's voluntary manslaughter statute is a CIMT).

California qualifies as a crime involving moral turpitude under 8 U.S.C § 1227(a)(2)(A).

**PETITION FOR REVIEW IS DENIED.**